UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOBBY SINGLETON, R05424,

    Petitioner,

v.

KIMBERLY BUTLER, Warden Menard Correctional Center,

    Respondent.

No. 14 C 4635

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Bobby Singleton was convicted of attempted murder after a bench trial, and is serving a prison term of 40 years at the Menard Correctional Center in Menard, Illinois, where he is in the custody of Warden Kimberly Butler. Singleton, pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. 6. The Warden answered the petition arguing that Singleton's petition should be denied. R. 14. For the following reasons, Singleton's petition is denied, and the Court declines to issue a certificate of appealability.

**Background**

At Singleton's bench trial, Antonia Guerrero and Jose Arteaga testified that on June 1, 2009, at 1 a.m., they were in the alley behind the restaurant where they worked. R. 15-3 at 14-15, 45-46. Guerrero testified further that Singleton approached them "closely," asked for money, and then pulled a gun out of his jacket pocket. *Id.* at 19-20. Arteaga, who does not speak English, heard Singleton say

something that he did not understand, and saw him point a gun at his chest. *Id.* at 47-48. Guerrero testified that Singleton then pulled back the gun's chamber before firing at Arteaga. *Id.* at 20-21. Arteaga was shot in the upper leg or groin area, and then ran away. *Id.* at 22, 48-49. Guerrero and Arteaga testified that Singleton chased after Arteaga and fired two more shots. *Id.* at 21-22, 48-50. Singleton then ran away, and Guerrero's husband—who also worked at the restaurant—came out and assisted Guerrero and Arteaga to get the attention of a police officer who happened to be driving by and call an ambulance. *Id.* at 23, 50-51, 66-67.

Guerrero and Arteaga pointed out Singleton to the police officer—Sergeant Hans Keller—and he chased Singleton in his car because Singleton was running "fairly fast," and he never saw him stagger or trip. *Id.* at 25, 52, 67, 74. Sergeant Keller testified that he stopped his car in front of Singleton and told him to stop. *Id.* at 68. Singleton continued walking away but stopped momentarily, crouched between two parked cars, and placed something on the ground. *Id.* at 68-69. Sergeant Keller had his gun drawn and Singleton eventually complied with Sergeant Keller's instruction to stop. *Id.* at 69. Sergeant Keller arrested Singleton and called for assistance from other officers. *Id.* Sergeant Keller testified that he could not recall whether he smelled alcohol on Singleton's breath, and that Singleton never staggered or tripped when he was running away from the scene of the incident. *Id.* at 73-74.

Sergeant Keller testified that after he gave custody of Singleton to the other officers, he returned to the spot where Singleton had crouched down and found a .22

2

caliber semi-automatic pistol. *Id.* at 69-70. The parties stipulated that an evidence technician processed the crime scene and recovered one live .22-caliber bullet and one expended .22-caliber shell casing. *Id.* at 91. The other officers brought Singleton back to the restaurant and Guerrero and Arteaga identified him as the shooter. *Id.* at 27, 53.

Detective Ed Heerdt testified that he also investigated the scene in the alley behind the restaurant. *Id.* at 75-76. He found that there was a "substantial amount of light" in the alley from the street lights. *Id.* at 76. He also testified that a semi-automatic pistol is operated by pulling back the top portion of the gun (known as the rack) in order to load a bullet into the chamber of the gun. *Id.* at 80. He testified further that if there was already a bullet in the chamber, sliding the rack would eject the unfired bullet and load another bullet into the chamber. *Id.* at 80-81. When a semi-automatic pistol is fired, the rack automatically slides so that the used bullet casing is ejected from the gun and a new bullet is loaded into the chamber. *Id.* Detective Heerdt also testified that he inspected a blue Cubs jacket with a hole in the right pocket which was recovered from Singleton, *id.* at 83-86, and that Singleton did not seem drunk when Detective Heerdt interviewed him. *Id.* at 89.

Singleton testified in his own defense. He admitted that he intended to rob someone on the night in question when he encountered Arteaga, approached to within a few feet of Arteaga, and asked him for money. *Id.* at 104. When Arteaga did not respond, Singelton testified that he reached into his pocket to take out his gun but it got caught and discharged accidentally and shot through his jacket. *Id.* at

3

101-02. Singleton testified that after the gun fired, he ran away and did not chase Arteaga or fire any more shots. *Id.* at 102. He also testified that he had shared a gallon of gin with his cousin that night prior to the incident, *id.* at 103, and that because he was intoxicated the police allowed him to "sleep" because he "was intoxicated" before talking with an Assistant State's attorney the next morning. *Id.* at 117-18. But he spoke with Detective Heerdt at the police station about an hour after his arrest before he was allowed to get some sleep. *Id.*

When he met with the Assistant State's Attorney that morning, Singleton also gave her a signed statement. *Id.* at 109. Part of the statement was a written Miranda warning that Singleton also signed. *Id.* at 111. The State initially used the statement to impeach Singleton's testimony. The statement says that Singleton walked up to Guerrero and Arteaga, pointed his gun at Arteaga, and told Arteaga to give him his money. *Id.* at 113. The statement then says that Singleton "moved the gun and pointed it lower," and Singleton "accidentally pulled the trigger." *Id.* The statement said that Singleton then put the gun in his pocket and he "pulled the trigger again" and made a hole in his jacket pocket. *Id.* at 114-15. The statement also says that Singleton was not under the influence of drugs or alcohol at the time of the incident. *Id.* at 115.

Detective Heerdt was recalled after Singleton's testimony. Detective Heerdt testified that he spoke with Singleton at the police station and read him the *Miranda* warnings. *Id.* at 122. According to Detective Heerdt, Singleton told him that the gun was outside his pocket when it first fired, and then he put it in his

pocket and it fired one or two more times. *Id.* at 123. Detective Heerdt also testified that Singleton told him that he pulled the rack on the gun in front of Guerrero and Arteaga. *Id.* Detective Heerdt then testified that he was present when Singleton told the Assistant State's Attorney that he walked up to Guerrero and Arteaga with his gun pointed at them, that the gun accidentally discharged, that he put the gun in his jacket pocket, and then the gun accidentally discharged one or two more times. *Id.* at 125. Detective Heerdt was present when Singleton hand wrote and signed a statement for the Assistant State's Attorney, who then re-typed the statement and read it back to Singleton giving him the opportunity to correct it, which Singleton did. *Id.* at 124-25. Singleton's written statement was admitted into evidence at the conclusion of Detective Heerdt's rebuttal testimony. *See id.* at 126-27. The State relied on Singleton's written statement in its closing argument. *Id.* at 134.

Singleton's trial counsel initially filed a motion to suppress the statements to the Assistant State's Attorney and Detective Heerdt on the basis that Singleton was not informed of his *Miranda* rights at the time of his arrest, and that any waiver of his rights was not knowing and voluntary because Singleton was drunk and high. *See* R. 15-1 at 22. Singleton's counsel withdrew the motion prior to trial. *Id.*

After hearing the evidence, the judge found the following:

> The defendant admitted that he was going to rob the Mexican man and his wife in the alley.
>
> At trial he testified that he never got a chance to pull the gun out, that it accidentally discharged one or two times, however, he was impeached with his statement to the

5

State's Attorney and detective wherein he stated that when he was going to rob the man and woman in the alley, he wanted to go up to them with the gun already pointed, so he took the gun out of his hoodie pocket and walked up to them with the gun pointed and told the man to give him his money.

He further stated in his written statement that he moved the gun and pointed it lower and that it accidentally – and he accidentally pulled the trigger.

In his written statement, he went on to state that he pulled the trigger again while trying to put it away and it made a hole in his sweatshirt.

His testimony at trial that the gun accidentally discharged in his pocket I find to be incredible in light of the bullet wound to [Arteaga] to his upper right hip. Antonio Guerrero and Jose [Arteaga], the victims, both testified credibly that the defendant had the gun out and pointed it at Jose [Arteaga's] chest and shot from two feet or one meter away. Their testimony was consistent with the bullet wounds. Mr. [Arteaga] was shot in the upper right hip and the bullet came out and came out his right buttock.

The offense of attempt[ed] murder requires a specific intent to kill. In *People v. Mitchell*, 209 Ill. App. 3d. 562, in discussing the requisite intent to commit attempt[ed] murder, the Court states that the offense of attempt[ed] murder requires a mental state of specific intent to kill. Intent is a state of mind which if not admitted can be established by proof of surrounding circumstances including the character of the assault, the use of a deadly weapon and other matters of which an intent to kill may be inferred. The very fact of firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill.

I find that the State has proven beyond a reasonable doubt that the defendant intended to kill under the facts as testified to in this case.

R. 15-3 at 150-52. The judge entered final judgment on one count of attempted murder and sentenced Singleton to 15 years, plus another 25 years for personally discharging a firearm that proximately caused great bodily harm in violation of 720 ILCS 5/24-1.2. *Id.* at 167-68.

Singleton represented by counsel appealed arguing that "no rational trier of fact could have concluded beyond a reasonable doubt that [Singleton] intended to kill [Arteaga]," and that he was denied effective assistance of counsel because "defense counsel filed but then withdrew a potentially meritorious motion to suppress statements" Singleton made. *See* R. 15-1 at 5. The appellate court affirmed the circuit court's judgment against Singleton. *See* R. 15-2 at 1-5 (*People v. Singleton*, 2012 WL 6953468 (Ill. App. Ct. 1st Dist. Sept. 18, 2012)).

Singleton pro se then filed a petition for leave to appeal to the Illinois Supreme Court making the same two arguments he made before the appellate court. *See* R. 15-2 at 6-34. The Illinois Supreme Court denied his petition on March 27, 2013. R. 15-3 at 1.

On June 18, 2014, this Court received Singleton's habeas corpus petition. *See* R. 1. He makes the following claims in his petition:

> Ground one[:] Ineffective Trial Counsel
> Where defense counsel filed but then withdrew a potentially meritorious motion to suppress statements, I was denied my rights to effective assistance of counsel. And also . . . counsel's failure to conduct any meaningful pretrial discovery, and thus was totally unaware that certain damaging evidence might have been [an] appropriate subject for a suppression motion.

7

> Ground two[:] Att[empted] First Degree Murder Must Be Vacated
> In its opinion, [the] court ruled that defendants [sic] intent to kill can be inferred from the act of firing a bullet at Arteaga from a short distance. The court stated that the trial testimony and physical evidence established that defendant pointed a loaded firearm at Arteaga's chest while standing only a few feet in front of him, racked the slide, and pulled the trigger, sending a bullet into Arteaga's upper right leg. In support of its opinion [the] court relied on the testimony of Arteaga and [Guerrero] that Singleton fired a gun shot at Arteaga's chest from close range, and that he chased Arteaga around a van firing two more times. These facts are unsupported by physical evidence in this case.
>
> Ground three[:] Att[empted] First Degree Murder
> . . . . Singelton's conviction for attempt[ed] first degree murder must be vacated because no rational trier of fact[] could have concluded beyond a reasonable doubt that Singleton had the specific intent to kill [Arteaga].

R. 6 at 6-8. On October 16, 2014, the Warden filed an answer seeking to have Singleton's petition dismissed. R. 14. This Court gave Singleton an opportunity to reply by December 19, 2014. *See* R. 16. Singleton has not filed a reply.

## Analysis

### I. Ground One

In the first sentence of Ground One supporting his habeas petition, Singleton argues that his trial counsel was ineffective for filing but withdrawing a motion to suppress his statements to the Assistant State's Attorney and Detective Heerdt. The Warden argues that the Court should reject this claim because the state

appellate court's decision rejecting it "is not contrary to or an unreasonable application of *Strickland v. Washington*." R. 14 at 13-14.[1]

To prevail on a claim of ineffective assistance, Singleton must demonstrate (1) that counsel provided deficient performance, meaning his representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Surmounting *Strickland*'s high bar is never an easy task," but on habeas review, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) ("The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' [under § 2254(d)(1)] is a high one . . . ."). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that [a habeas petitioner] has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was

---

[1] The Warden also argues that the Court should reject Ground One because it is "factually insufficient" in that Singleton "has failed to support it with an adequate factual description," specifically "what statements should have been suppressed or why they should have been suppressed." R. 14 at 13. Although Singleton's habeas petition does not specifically identify the statements he claims his trial counsel should have suppressed, Singleton makes his claims with reference to the suppression motion his trial counsel filed and withdrew. There is no dispute as to which statements trial counsel's motion sought to suppress. Thus, Singleton has provided the Court with sufficient facts.

9

unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). When the "highly deferential" standards created by *Strickland* and § 2254(d) are applied together, review is "doubly deferential." *Knowles*, 556 U.S. at 123. In such circumstances, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### A. Deficient Performance

The state appellate court held that Singleton could not show that his trial counsel was ineffective, and that even if counsel was ineffective, Singleton could not show that he suffered any prejudice. The appellate court held that trial counsel's decision to withdraw the motion to suppress did not constitute deficient performance because the decision "may be viewed as a sound tactical decision to avoid [Singleton] giving pretrial sworn testimony that might be used at trial for impeachment." *Singleton*, 2012 WL 6953468, at *5; *see also People v. Mulero*, 680 N.E.2d 1329, 1339 (Ill. 1997) ("It is also well established that a defendant's testimony in conjunction with his or her motion to suppress evidence can be used to impeach a defendant's testimony at trial."). Singleton has not provided any argument sufficient to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Thus, Singleton's claim regarding his trial counsel's decision to withdraw a motion to suppress is denied.

10

## B. Prejudice

In addition to finding that trial counsel's decision to withdraw the suppression motion did not constituted deficient performance, the appellate court found that Singleton was not prejudiced by admission of his prior statement for two reasons: (1) it is unlikely that a suppression motion would have been successful; and (2) admission of Singleton's written statement was harmless error. This Court agrees with the first, but not the second alternative basis for denying Singleton's ineffective assistance claim.

### 1. Likelihood of Success of a Suppression Motion

The appellate court held that "there was little likelihood the motion to suppress would have succeeded if it went to a hearing," because the trial "evidence revealed that [Singleton] was given adequate Miranda warnings . . . he signed a written form acknowledging he had been cautioned pursuant to Miranda. . . . [and] that [he] was [not] so grossly intoxicated that he did not have the capacity to waive his rights." *Singleton*, 2012 WL 6953468, at *6. This Court agrees with these findings and there is no reason to question them. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . . (citing 28 U.S.C. § 2254(e)). Singleton did not testify that he was not given a *Miranda* warning, Detective Heerdt testified that he gave Singleton the *Miranda* warning, and Singleton testified that he signed the written Miranda warning that was included with his written statement. Further, Officer Keller and Detective Heerdt both

11

testified that Singleton's demeanor and behavior indicated that he was lucid, and there is no evidence that Singleton's statements were coerced. See *United States v. Chrismon,* 965 F.2d 1465, 1469 (7th Cir. 1992) ("[A] defendant's intoxication or low intelligence by itself—without some showing of coercion by the government—will not negate voluntariness."); *see also United States v. Toro,* 359 F.3d 879, 885 (7th Cir. 2004) ("Since [the defendant] did not detail any facts showing mental or physical coercion by the police, he did not meet his burden of showing a prima facie case of involuntariness . . . ."). Additionally, even if Singleton was impaired at the time he spoke with Detective Heerdt, he was given the opportunity to "sleep" before speaking to the Assistant State's Attorney. At that point, Singleton testified that he was able to instruct the Assistant State's Attorney to make certain revisions to the typed version of his statement. This is more than sufficient evidence to support the state court's finding that Singleton's statements were voluntary. Since Singleton statements were *Mirandized* and were voluntary there was no prejudice from trial counsel's failure to challenge those statements.

### 2. Harmless Error

The Warden also makes the additional alternative argument that Singleton's petition should be denied because the appellate court found that Singleton suffered no prejudice from the admission of his statements into evidence "because the remaining admissible evidence overwhelmingly proved [Singleton] guilty of attempted murder." R. 14 at 19; *see also Singleton*, 2012 WL 6953468, at *6 (the appellate court found that even if Singleton's statements were improperly admitted,

12

there was still no *Strickland* prejudice because the remaining "admissible trial evidence overwhelmingly established [Singleton's] intent to kill Arteaga, both through the testimony of Arteaga and Gurrero and the physical evidence."). This Court rejects this aspect of the state appellate court's reasoning, which is akin to a harmless error argument. The proper standard for determining whether the admission of a statement in violation of *Miranda* constitutes harmless error is "not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. . . . The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely *unattributable* to the error." *Smiley v. Thurmer*, 542 F.3d 574, 584 (7th Cir. 2008) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)) (emphasis added).

Here, the State relied on Singleton's written statement in its closing argument, and the trial court expressly relied on Singleton's written statement in reaching it verdict. The trial court found that

> [Singleton] further states in his written statement that he moved the gun and pointed it lower and that . . . he accidentally pulled the trigger.
>
> In his written statement, he went on to state that he pulled the trigger again while trying to put it away and it made a hole in his sweatshirt.

R. 15-3 at 150-51. These findings are relevant to explain the physical evidence regarding the location of Arteaga's wound and the cause of the hole in Singleton's

13

jacket (or sweatshirt). To the extent that trial court found Singleton's written statement necessary to reconcile what might otherwise have been dispositive evidentiary discrepancies—i.e., why was Arteaga shot in the upper leg when he and Guerrero testified that Singleton pointed his gun at Arteaga's chest from close range; and, why was there a hole in Singleton's jacket pocket if he shot Arteaga with his gun outside his pocket—this Court cannot say that the trial court's verdict was "unattributale" to the admission of Singleton's statements. Thus, although this Court has found that trial counsel's decision not to seek to suppress Singleton's statements did not constitute ineffective assistance of counsel for reasons discussed previously, this Court does not agree with the Warden's alternative argument that even if the statements were improperly admitted into evidence, such admission did not prejudice Singelton.[2]

## II. Grounds Two and Three

In Ground Two, Singleton argues that the physical evidence does not support the facts found by the trial court, and in Ground Three he argues that no rational trier of fact could have found that he had the intent to kill Arteaga. In the state

---

[2] In the second sentence of Ground Two, Singleton claims that trial counsel failed to conduct sufficient pretrial discovery. This ground is an insufficient basis to grant Singleton's petition both because he does not explain what evidence trial counsel failed to discover, *see Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) ("mere notice pleading is not sufficient in the habeas corpus context," and a petitioner must "set forth in summary form the facts supporting each of the grounds"), and because he did not raise this issue during the state proceedings. *See Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) ("To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999))).

court, Singleton argued that the testimony of the State's witnesses, which supported the trial court's verdict, "is too improbable to be worthy of belief," R. 15-1 at 12, because the witnesses testified that Singleton pointed his gun at Arteaga's chest at close range, yet shot him in the leg, and because the witnesses testified that Singleton fired two more shots at Arteaga but only one bullet casing was recovered from the scene.

"A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id*. "The federal court instead may do so only if the state court decision was objectively unreasonable." *Id*. "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken but that they must nonetheless uphold." *Id*.

Singleton raised two particular evidentiary discrepancies to argue that the trial court's verdict was unreasonable. One, Guerrero and Arteaga both testified that Singleton was pointing the gun at Arteaga's chest, but Arteaga was shot in the upper leg. And two, Guerrero and Arteaga both testified that Singleton fired two more shots at Arteaga as he chased after him, but only one bullet casing was recovered from the scene.

These discrepancies, however, are not so great or unexplainable as to require that the trial court's verdict be overturned. The testimony that Singleton was pointing his gun at Arteaga's chest but shot him in the leg is not particularly surprising unless Singleton is an expert marksman, and there is no evidence to that effect. Further, it is possible that Singleton was pointing the gun towards Arteaga at a downward trajectory, but Guerrero and Arteaga perceived it to be pointing directly at Arteaga's chest. Also, the action of pulling a gun's trigger or the force of firing the gun could have altered Singleton's aim. In any case, there was sufficient evidence to find that Singleton was at least pointing the gun in the direction of Arteaga's body, if not squarely at his chest, when he fired the gun, even if the precise direction is uncertain. It was not necessary for the trial court to determine the specific part of Arteaga's body the gun was actually pointed towards beyond a reasonable doubt in order to find beyond a reasonable doubt that Singleton pointed his gun at Arteaga and thus intended to shoot him. The evidence supported the finding that Singleton pointed a gun at Arteaga and fired from relatively close range. This is sufficient evidence to convict Singleton of attempted murder.

The fact that only one used bullet casing was recovered at the scene is also an insufficient basis to hold that the trial court's verdict was unreasonable. Although Singleton testified at trial that he only fired the gun once, on the night of the incident, before he knew that only one bullet casing would be recovered from the scene, he told the Assistant State's Attorney and Detective Heerdt that the gun fired multiple times in his pocket. Thus, Singleton's contemporaneous account of the

incident, and Guerrero's and Artegea's testimony are consistent regarding how many shots Singleton fired, and all three accounts are inconsistent with the number of bullet casings recovered from the scene. Since even Singleton's contemporaneous (and thus, more credible) account of the incident raises an issue of missing bullet casings, this factual discrepancy is not a reason to discredit Guerrero's and Arteaga's testimony.

Moreover, Guerrero's testimony and Singleton's contemporaneous statement are bolstered by other physical evidence. An unfired bullet was also recovered at the scene. This is consistent with Guerrero's testimony that Singleton pulled back the gun's rack before firing the gun, and Singleton's statement to that effect. This evidence casts doubt on Singleton's trial testimony during which he denied racking his gun prior to firing it.

Although Singleton did not raise it in the state court proceedings, the Court also notes that Guerrero's, Arteaga's, and Singleton's accounts are all consistent with the fact that there was a hole in Singleton's jacket pocket. At trial, Singleton testified that the hole was created when he tried to remove the gun from his pocket and he accidentally shot Arteaga. After he was arrested, however, Singleton stated that the hole was created when the gun went off when he replaced the gun in his pocket after shooting Arteaga. This account that Singleton gave to the Detective Heerdt and the Assistant State's Attorney is consistent with Guerrero's and Arteaga's testimony that Singleton continued to fire the gun after he shot Arteaga

17

and as he chased him. The trial court found that this account was credible and convicted Singleton on that basis.

For these reasons, the trial court's verdict was not contrary to the evidence.

### III. Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler,* 132 S.Ct. 641, 649 n.5 (2012). To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000); *see also Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir.2011). Here, the Courts denial of Singleton's claims regarding ineffective assistance of counsel and the sufficiency of the evidence at trial all rest on application of well-settled precedent. Accordingly, certification of any of Singleton's claims for appellate review is denied.

**Conclusion**

For the foregoing reasons, Singleton's petition, R. 6, is denied, and the Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: February 8, 2016